IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT CARL LEIFESTER, #938468 | § § § | |
| v. | § § § § | CIVIL ACTION NO. G-03-929 |
| NATHANIEL QUARTERMAN, DIRECTOR OF TDCJ-CID[1] | § § § | |

## REPORT AND RECOMMENDATION

Before the Court is the Petition for a Writ of Habeas Corpus of Robert Carl Leifester, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") (Instrument No. 1). He is represented in this action by attorney Winston Earle Cochran, Jr. Respondent filed an Answer seeking the dismissal of Petitioner's writ (Instrument No. 10), to which Petitioner filed a Reply. Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254. The State has custody of Petitioner pursuant to a judgment and sentence entered by the 212th Judicial District Court of Galveston County, Texas in Cause No. 98-CR-0743. Petitioner pled "guilty" to the first degree felony offense of murder with an affirmative finding of a deadly weapon.

---

[1] The previous named Respondent in this action was Doug Dretke. Effective June 1, 2006, Nathaniel Quarterman succeeded Doug Dretke as Director of the TDCJ-CID and, under Rule 25(d)(1) of the Federal Rules of Civil Procedure, is automatically substituted as a party.

1

(C.R. at 158-159; T.T., Vol. 2 at 1-3). He elected to have the jury determine his punishment. (T.T., Vol. 2 at 4). On July 13, 2000, after hearing all the evidence presented in the punishment phase of the trial, the jury assessed Petitioner's punishment at life imprisonment.

Petitioner filed a Motion for New Trial due to an error in the punishment phase of the trial. The Motion was denied by the trial court. (C.R. at 191-197). Petitioner then filed an appeal. (C.R. at 198). The First Court of Appeals in Houston affirmed his conviction on December 13, 2001. *Leifester v. State,* No. 01-00-00906-CR (Tex.App.–Houston [1st Dist.] 2001). Petitioner filed a Petition for Discretionary Review ("PDR") with the Texas Court of Criminal Appeals (TCCA), which was denied by the Court on April 17, 2002, and also upon rehearing on May 29, 2002. *Leifester v. State*, PDR No. 0240-02.

On August 27, 2003, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure challenging his conviction. His state habeas application was denied without written order by the TCCA on October 29, 2003. *Ex parte Leifester*, WR-57,289-01.

Petitioner filed the instant writ on October 29, 2003. Petitioner claims he is entitled to federal habeas relief based on the following grounds:

> (1) he was denied due process of law in the state habeas corpus proceeding because he was not afforded a hearing;
>
> (2) Texas Penal Code § 19.02(d) is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because it places the burden of proof on a defendant to show that a homicide occurred as a result of sudden passion arising from adequate cause; and
>
> (3) he was denied effective assistance of trial counsel because counsel: (a) failed to request a jury instruction on sudden passion arising from adequate cause under Texas Penal Code § 19.02(d); and (b) failed to investigate and present mitigating evidence during the punishment phase of trial.

Fed. Writ Pet. at 3-10. The Court will address each issue in turn.

### *Claim of Denial of Due Process In State Habeas Proceedings*

Petitioner claims that he was denied due process in his state habeas proceeding because the state failed to conduct an evidentiary hearing, or some functional equivalent, which has "interfered with this Court's power to carry out its responsibilities under 28 U.S.C. § 2254." Fed. Writ Pet. at 4; Pet'r Reply at 10. Petitioner also appears to suggest that because "established Texas law indicates that ineffective assistance of counsel claims are best reviewed in habeas proceedings," that a denial of an evidentiary hearing during state habeas review amounts to a denial of review "which Texas case law dictates." *Id*. at 5.

Regardless of how the issue is couched, this claim is nothing more than an attack upon the state court habeas proceeding. The Fifth Circuit has long recognized that "[a]n attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd v. Johnson*, 256 F.3d 317, 310 (5th Cir. 2001); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Accordingly, this Circuit has repeatedly held that a challenge to a state's habeas corpus proceedings is not a proper ground for relief in a federal habeas corpus case. *Hallmark v. Johnson,* 118 F.3d 1073, 1080 (5th Cir. 1997) ("[i]nsofar as [the petitioner] raises a due process challenge to the state habeas proceeding, his claim fails because infirmities in state habeas corpus proceedings do not constitute grounds for relief in federal court."); *see also Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (alleged errors in state court habeas proceeding do not provide a basis for federal habeas relief). Moreover, a determination at the state level of the need for an evidentiary hearing is a decision to be made by the state convicting court in the exercise of its sound discretion and an allegation that the state court abused its discretion in not holding an evidentiary hearing will

3

not form the basis for federal habeas relief. *See Tijerina v. Estelle*, 692 F.2d 3, 5 n. 2(5th Cir. 1982); *see also Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984) (abuse of discretion in state habeas proceedings does not implicate constitutional protections for purposes of federal habeas writ); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) (a state has no constitutional duty to provide post-conviction remedies, therefore, state court decision to curtail an inmate from filing future state writs because he had abused the writ process was not a denial of due process). Petitioner is not entitled to federal habeas relief on this claim. Accordingly, this Court **RECOMMENDS** the Petition be **DENIED** on this point.

### *Claim Challenging Constitutionality of Texas Penal Code § 19.02(d)*

Petitioner claims that Texas Penal Code § 19.02(d) is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because the statute places the burden of proof on a defendant to show that a homicide occurred as a result of sudden passion arising from adequate cause. Fed. Writ Pet. at 5. Stated in another manner, Petitioner contends the Texas statute is unconstitutional because it does not require the State to prove beyond a reasonable doubt the absence of mitigating circumstances. In addition to *Apprendi*, Petitioner relies upon the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent argues Petitioner's reliance on these cases is misplaced. This Court agrees.

In *Apprendi* the Supreme Court determined that sentence enhancements based on judicial fact findings, which increased the range of punishment beyond the offense for which the jury found the defendant guilty, violated the Due Process Clause. *Apprendi*, 530 U.S. at 469. Consistent with *Apprendi*, the Court in *Blakely* determined that, for purposes of the federal sentencing guidelines, a defendant's Due Process protections were violated when a judge was allowed to make a finding

of a factual issue that had the effect of increasing the sentence beyond the expected range of punishment for which he was found guilty. *Blakely*, 542 U.S. at 303-04.

The present case is unlike that of either *Apprendi* or *Blakely*. Notably, under the Texas statute, it is only <u>*after*</u> being found guilty beyond a reasonable doubt of the first degree felony of murder,[2] that section 19.02(d)[3] operates to permit the defendant, at the punishment phase of the trial, to prove the mitigating defense of sudden passion by the preponderance of the evidence, which might have the effect of lessening, not increasing, his sentence to that of a second degree felony.[4] Such a statutory scheme does not violated the principles enunciated in *Apprendi*. *See Granados v. Quarterman*, 455 F.3d 529, 536-37 (5th Cir.), *cert. denied*, _ U.S. _, 127 S.Ct. 732 (2006) (rejecting defendant's argument that the Texas death penalty scheme was unconstitutional because it violated the principles in *Apprendi*, the court held that the mitigating evidence presented at the punishment phase of the trial could have the effect of *reducing* the sentence for the offense, which the jury had already found the State successfully proved beyond a reasonable doubt, from death to life, rather than increasing it to death). Moreover, contrary to Petitioner's contentions, the statute does not unconstitutionally shift the burden from the State to the defendant, nor does it violate a defendant's

---

[2] Section 19.02 of the Texas Penal Code, entitled "Murder" provides, in relevant part, the following: "(b) A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b).

[3] Section 19.02(d) provides "[a]t the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." Tex. Pen. Code § 19.02 (West 2004).

[4] Under Texas law, a first degree felony is punishable by imprisonment for a term "for life or for any term of not more than 99 years or less than 5 years," whereas a second degree felony is punishable by imprisonment "for any term of not more than 20 years or less than 2 years." Tex. Pen. Code §§ 12.32(a); 12.33(a) (West 2004).

5

due process rights. *Gipson v. State*, 82 S.W.3d 715, 724 (Tex.App.–Waco 2002) (*after* State established elements of murder beyond a reasonable doubt at the guilt-innocence phase, section 19.02(d) allowed the defendant at the punishment phase to establish mitigating defense of sudden passion by a preponderance of the evidence, but statute provision did not unconstitutionally shift burden of proof from State to the accused, nor did it violate accused's due process rights); *Kreyssig v. State*, 935 S.W.2d 886, 891 (Tex.App.–Texarkana 1996, pet. ref'd) (holding Texas Penal Code section 19.02 was not unconstitutional because it placed burden on defendant during punishment phase to establish by a preponderance of the evidence that he committed the murder under the influence of sudden passion); *see also Walton v. Arizona*, 497 U.S. 639 (1990) (holding it was not unconstitutional to place burden on the defendant to establish mitigating circumstances by preponderance of evidence); *Barnes v. State*, 876 S.W.2d 316 (Tex.Crim.App.), *cert. denied*, 513 U.S. 861 (1994) (in death penalty case, trial court did not error in failing to place burden of proof on the State to negate the mitigating circumstances).

Finally, this Court observes that Petitioner raised this same issue in state court on direct appeal and the court of appeals, reviewing the statute in light of the holding in *Apprendi*, determined that the Texas statute did not violate the principles enunciated in that case. *Leifester v. State*, No. 01-00-00906-CR, at 8-9. Petitioner also raised this issue in his state habeas petition, but it was again rejected. *Ex parte Leifester*, Applic. No. 57,289-01. Petitioner has not established, nor does this Court find, that the state court's determination was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); *see also Ogan v. Cockrell*, 297 F.3d 349, 355 (5th Cir. 2002). This Court, therefore, **RECOMMENDS** the Petition be **DENIED** on this point.

*Claims of Ineffective Assistance of Trial Counsel*

Petitioner claims that he was denied effective assistance of counsel at trial because his attorney failed to request a jury instruction on sudden passion arising from adequate cause under Texas Penal Code § 19.02(d), and failed to investigate and present mitigating evidence during the punishment phase of trial.

The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel. U.S. CONST., Amend. VI. It does not, however, guarantee a criminal defendant "errorless representation." *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983). To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner's failure to establish either prong of Strickland necessarily requires a finding that counsel's performance was constitutionally effective. *Id.* at 687.

When determining whether counsel's performance was deficient, courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that assistance was reasonably effective). A petitioner must also overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Wilkerson v. Collins*, 950 F.2d at 1064 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing));

*see also*, *Moreno*, 717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial"). Therefore, when making that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Strickland*, 466 U.S. at 690 (an ineffective claim is judged not by isolating a portion of counsel's representation, but on the totality of the representation).

The second prong of the test requires a petitioner to show prejudice. To establish prejudice, a petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means a probability sufficient to undermine the confidence in the outcome. *Id*. A petitioner must "affirmatively prove prejudice." *Id*. at 693. A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Nor can a petitioner rely on conclusory allegations to satisfy this prong. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been here, a federal court may not grant habeas relief unless it decides that the state court's application of the *Strickland* standard was "objectively unreasonable." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000). In making this determination, a federal court's focus is on the state court's ultimate legal conclusion, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

1. *Sudden Passion Instruction*

Petitioner alleges that he was denied constitutionally effective assistance of counsel at trial because his attorney failed to request a jury instruction on sudden passion. Defense counsel did not request an instruction on sudden passion and counsel's precise reason for not doing so is not plainly evident in the record. Nevertheless, the Court observes that it is not always necessary to hold an evidentiary hearing on a claim of ineffective assistance of counsel if a court can conclude on the record as a matter of law that a movant has failed to establish one or both of the *Strickland* elements. *U.S. v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Furthermore, a petitioner bears the burden of proof under *Strickland* and, unless rebutted, a court may indulge in the strong presumption that counsel acted reasonably. *Strickland*, 466 U.S. 689.

Under Texas law, sudden passion must be directly caused by and arise out of provocation of the deceased at the time of the offense. *Hobson v. State*, 644 S.W.2d 473, 478 (Tex.Crim.App. 1983); *see also Nance v. State*, 807 S.W.2d 855, 861 (Tex.App.–Corpus Christi 1991, pet. ref'd).[5] Causes that would not render the ordinary person's mind incapable of cool reflection do not constitute adequate cause. *See* Tex. Pen. Code § 19.02(a)(1). Accordingly, "[a] bare claim of 'fear' does not demonstrate 'sudden passion arising from adequate cause.'" *Daniels v. State*, 645 S.W.2d 459, 460 (Tex.Crim.App. 1983). Passion that is solely the result of former provocation or anger is insufficient to raise the issue. *Hobson*, 644 S.W.2d at 478; *Smith v. State*, 721 S.W.2d 844, 854

---

[5] The Texas statute defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Pen. Code § 19.02(a)(2). "Adequate cause" is defined as a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Pen. Code § 19.02(a)(1).

(Tex.Crim.App. 1986); *see also Masson v. State*, 798 S.W.2d 854, 856 (Tex.App.–Hous. [14th Dist.] 1990, no pet.) (holding that passion resulting solely from former provocation, which was all that the evidence in that case supported, did not constitute sudden passion or adequate cause); *Lopez v. State*, 716 S.W.2d 127, 129 (Tex.App.–El Paso 1986, pet. ref'd) (holding "a long simmering response to *suspected* former provocation" will generally not suffice to raise issue). Neither will instances of either ordinary anger or anger resulting from a cause of defendant's own making, "such as precipitating a confrontation," raise the issue. *Naasz v. State*, 974 S.W.2d 418, 423 (Tex.App.–Dallas 1998, pet. ref'd); *see also Daniels,* 645 S.W.2d at 460 (holding sudden passion does not exist when the defendant's assessment prior to murder that, had he not killed the victim "it would have been [him]" does not reflect terror but rather that defendant "reflected on it, knew what he had to do and did it."); *Goff v. State*, 681 S.W.2d 619, 625 (Tex.App.–Houston [1st Dist.] 1983) (holding defendant's testimony that "he wanted to get the deceased before the deceased got him" demonstrated that he "was consciously aware of his actions and planned them out.").

Reviewing the evidence presented in this case in light of the Texas case law, an instruction on the issue of sudden passion arising from adequate cause would not appear to be warranted and, in fact, appears to be negated by Petitioner's own testimony. *See generally*, *Leifester v. State*, No. 01-00-00906-CR, at 2-6 (holding trial court did not err in failing to give instruction on facts of case). In particular, as set forth by the appellate court, the facts in this case showed the following:

> Texas City Police Officer Richard Sedgwick testified that he was dispatched to a reported stabbing at the Sundance Apartments on April 28, 2000. Sedgwick testified that he found the body of Michael Flory lying on the ground, near apartment 108, with 'blood all around him.' A knife was lying beside Flory. Sedgwick further testified he could see Flory's neck was deeply cut.

Texas City Police Sergeant Brian Goetschius testified he and other officers interviewed possible witnesses in apartments close to the scene, and learned appellant's father lived in apartment 102 or 103. The police entered the apartment and saw 'a little blood near the door.' Police also seized a .22 caliber rifle found inside the apartment. Goetschius testified that, in the course of investigating this case and interviewing possible witnesses, he received a telephone call from 'two girls from Galveston' regarding the case. Goetschius testified these two women were interviewed and told the police appellant 'had bragged about what happened.' Based on this information, the police obtained an arrest warrant for appellant.

Appellant was arrested and gave a written statement to police, which was admitted as an exhibit at trial. Appellant admitted, 'I cut Flory's throat at my dad's place and shot him next door.'
Specifically, he stated:

> We stopped at my dad's apartment. We both went in. We sat there and talked. We was just sitting there talking, me, him, and my dad. He was getting ready to go. I went and got a soda from the icebox. [Flory] was sitting in my dad's wheelchair. He was facing away from me. I came up behind him and cut his throat.
>
> \*   \*   \*
>
> I used a big hunting knife, the one you found–beside him. He ran out the door. I am sure he was bleeding. He was cut ear to ear. He ran out the door. He was banging on the neighbor's door and I shot him. I went around and shot him. I shot him with a .22 rifle. They were .22 mini mags. I shot him in the head. That's what I was aiming for. He was standing up when I shot him. He had been knocking on the door. I aimed at his head and shot him. Before I shot him, he said [']Robert, don't.['] I shot him.

Appellant further indicated that he had been riding around with Flory earlier in the evening, after Flory purchased some drugs in Texas City. Appellant stated that Flory brought the drugs back to Galveston to sell and that he rode with Flory in case Flory needed protection.

Appellant further claimed he had to kill Flory because Flory had previously told appellant he was going to kill Robin Gowens, appellant's girlfriend. Appellant claimed he was trying to 'keep

11

anything from happening to her,' as well as help Gowens recover some of her possessions taken by Flory. Appellant also claimed Flory had previously paid someone to try and kill appellant's mother by setting fire to her house.[6]

Appellant stated he threw the rifle he used to shoot Flory in Dickinson Bayou. However, police later determined appellant used a rifle recovered from his father's apartment. Appellant stated he took Flory's keys and wallet, but did not take money or drugs off of Flory's body. Appellant drove Flory's car to a supermarket parking lot in Dickinson and left it there for a day. He retrieved the car and drove it to Bacliff and then to Friendswood, where he posed as Flory to cash some checks.

Goetschius testified that, during his interview of appellant, he asked appellant if he regretted killing Flory. Appellant replied, 'I regret I did it. It didn't have to be done, but I did it, but he was going to kill my mom, he tried to kill her, and he was going to kill Robin.'

Appellant gave essentially the same account of the murder in his testimony. Appellant testified he and Flory had been friends who drank and used crack cocaine together. Appellant admitted he told a number of people he killed Flory, although he denied bragging about it. In his written statement, appellant attempted to justify the murder by stating he thought Flory might kill his girlfriend or his mother if appellant did not kill him first. In his trial testimony, appellant added that he believed Flory also intended to kill him later that night, though appellant admitted Flory never actually threatened him or posed any immediate danger at the time of the murder.

Gowens testified for the defense and corroborated appellant's testimony about the incidents between her and Flory prior to the murder, as well as appellant's actions after the murder. Gowens confirmed appellant told at least five people about the murder when he was with her, and conceded appellant did sound like he was bragging about the murder.

Two of appellant's friends, Peddis Ray and Steven Weber, also testified for the defense. Ray testified he and appellant had helped appellant's mother get out of her burning house, and it was his

---

[6] About a week prior to the murder, appellant's mother's house burned down. The fire was ruled an accident.

>  impression that appellant believed Flory was responsible for the fire. Ray further testified appellant told him the reason he killed Flory was to protect his girlfriend and mother. Weber testified he witnessed an incident in which Flory had grabbed Gowens by the neck. Weber further testified appellant told him appellant's only reason for the murder was 'he thought he had to get [Flory] before [Flory] got him.'

*Leifester v. State*, No. 01-00-00906-CR, at 2-6.

Since the evidence presented in this case does not indicate that sudden passion played any part in Petitioner's actions, but instead indicates that he killed the victim with cool reflection and deliberateness, this Petitioner has failed to establish, and this Court is unable to find, that defense counsel was deficient for not requesting an instruction on sudden passion arising from adequate cause. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) (holding an attorney cannot be judged deficient for failing to raise a frivolous point); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (counsel will not be found deficient for failing to press frivolous or futile issue).

However, even assuming arguendo that counsel's performance was deficient for failing to request the instruction, Petitioner must affirmatively prove, and not merely allege, prejudice. *Strickland*, 466 U.S. at 693; *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) (holding that simply alleging prejudice will not suffice). Petitioner has failed to show that, but for his counsel's alleged errors, the jury verdict would have been different. His conclusory allegations will not suffice. *Schlang*, 691 F.2d at 799. This claim should be dismissed as it lacks merit.

### 2. *Mitigating Evidence Issue*

Petitioner alleges that trial counsel was ineffective for failing to investigate and present mitigating evidence during the punishment phase of trial. He states that "Supreme Court law establishes that the investigation and presentation of mitigating evidence must be thorough in a

13

capital case," and suggests the same "thoroughness" must be required of counsel in this case because the punishment range include life imprisonment.  Fed. Writ Pet. at 9.

Defense counsel has an obligation to investigate and present mitigating evidence during the punishment phase of a capital murder trial, however, the instant case did not involve a charge of capital murder.  Furthermore, while Petitioner argues that the same duties should apply to non-capital cases, he fails to cite any direct authority for such a contention.

Nevertheless, Petitioner suggests that defense counsel's performance was deficient for failing to present mitigating evidence at trial in the hope of obtained leniency from the jury after his "seemingly remorseless behavior after the killing."  Pet'r Reply at 25.  Petitioner maintains counsel should have presented evidence that: (1) when Petitioner was *three years old* his younger brother died in his crib from accidental strangulation and that he never received any counseling for it, (2) that he had a "mean and abusive father" growing up; (3) the death of his grandfather at home; (4) the humiliation of having his wife become involved in prostitution; and  (5) that he had been drawn into regular drug usage.  Petitioner also faults counsel because he claims "a number of defense witnesses were not interviewed about matters which could have helped the defense." Fed. Writ Pet. at 10.

Contrary to Petitioner's assertions, a review of the record reflects that reflects that mitigating evidence was presented during the punishment phase of the trial.  For example, in the hope of receiving leniency from the jury, defense counsel elicited testimony from Petitioner about his troubled upbringing and the hard life he had endured which included testimony that his father was very abusive when he was a child, that he had substance abuse problems, and that one of his brothers died in a crib as a baby and another brother and two cousins died by asphyxiation in a gas accident

attributed to a faulty heater. Furthermore, although Petitioner asserts that counsel failed in interview "a number of defense witnesses" he fails to set forth who these witnesses were, the nature of their testimony, and whether they were even available to testify. Petitioner fails to establish that defense counsel's performance was deficient. Petitioner also fails in his burden to show actual prejudice. In other words, even assuming counsel had presented the evidence Petitioner now sets forth, given the brutal nature of the offense for which he pled guilty, he fails to establish that the jury would have been moved to impose a sentence of less than life. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Mere speculation will not entitle him to the relief he seeks. *Bradford*, 953 F.2d at 1012.

For all the reasons discussed, Petitioner fails to overcome the strong presumption of competence and high burden of actual prejudice required to establish he was denied constitutionally effective assistance of counsel. The Court also finds that there has also been no showing that the state adjudication of his claim was not contrary to, or involved an unreasonable application of clearly established federal law. This Court, therefore, **RECOMMENDS** the Petition be **DENIED** on this point.

## CONCLUSIONS

For all the foregoing reasons, it is the **RECOMMENDATION** of this Court the Petition for a Writ of Habeas Corpus of Robert Carl Leifester (Instrument No. 1) be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **February 16, 2007,** in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. <u>The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553</u>. **Any Objections filed SHALL be contained in a written document**

specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge", which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

      **DONE** at Galveston, Texas, this _____25th_____ day of January, 2007.

                                              John R. Froeschner
                                              United States Magistrate Judge